## Richmond.

GOODE & CO. v. GEORGIA HOME INSURANCE COMPANY.

DECEMBER 19, 1895.

Absent, Keith, P.*

1. INSURANCE—*Liability of Insurer for Acts of Agents and Their Clerks.*
An insurer is responsible not only for the acts and declarations of
its general agents, within the scope of their authority, but also for
the acts and declarations of the clerks and employees of such
agents, to whom the latter delegate authority to discharge their
functions, within the scope of the agents' authority, and while en-
gaged about the business of the principal.

Error to a judgment of the Circuit Court of Fauquier
county, rendered April 13, 1892, in an action of *assumpsit*
wherein the plaintiffs in error were the plaintiffs, and the
defendant in error was the defendant.

*Reversed.*

The opinion states the case.

*Jeffries & White,* for the plaintiffs in error.

*Eppa Hunton, Jr.,* and *W. W. & B. T. Crump,* for the
defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Upon the trial of this cause, which is an action of *assump-*

---

*Judge Keith decided the case in the Circuit Court.

*sit* upon a fire insurance policy, the court excluded from the
jury certain evidence offered by the plaintiffs in error. The
court also gave judgment in favor of the defendant upon its
demurrer to the evidence.

The action of the court, both in excluding evidence and in
giving judgment in favor of the defendant, is assigned as
error in this court.

The propriety of the rulings of the court in refusing to
allow the rejected evidence to go to the jury depends upon
the question whether the defendant company was affected by
the knowledge of certain material facts which came to the
sub-agent, or employee of the agents, of the company, through
whom the insurance was effected.

The defence relied on by the defendant was that the plain-
tiffs, in making out their application for insurance, had stated
that there was no lien and no other insurance upon the
property insured, when in fact there was a deed of trust upon
it for $390, and insurance in another company to the extent
of $1,200 ; and that by reason of these false statements the
policy was void.

The plaintiff sought to show that Robert E. Harris, through
whom their insurance was effected, had full knowledge of
both the deed of trust and the other insurance upon the pro-
perty, and that it was by his advice that their application did
not disclose these facts, and that the defendant was estopped
from relying on such facts to avoid the policy. The de-
fendant denied that Robert E. Harris was its agent, or that
it was affected by his knowledge.

The plaintiffs' evidence showed that Thomas B. Harris &
Son were the agents of the defendant company for Culpeper
and its vicinity, and that they were authorized " to receive
proposals for insurance against loss or damage by fire, fix
rates of premium, receive moneys, countersign, issue, and
renew policies duly signed by the president and secretary,

and grant permission of transfer of policies on behalf of said company, subject to the rules and regulations of the company." * * * It also tended to show that, whilst the plaintiffs were taking an inventory of their goods in order to have them insured, Robert E. Harris came to their store, "representing himself to be the son of T. B. Harris, of Culpeper, Va., who were the agents" both of the defendant company and the Virginia Fire and Marine Insurance Company; that this was the first time they had ever seen him; that after three trips to their store, soliciting their insurance, they insured their property in both of the companies; that their applications for insurance were signed "by the hand of Robert E. Harris, signing the firm-name of Thomas B. Harris & Son, and that the measurement of the storehouse was made, and diagrams drawn, by him."

Thomas B. Harris was called by the plaintiffs, and testified that Robert E. Harris was his son, but was not a member of the firm of Thomas B. Harris & Son, and was not at any time the agent of the defendant; that the son who was a member of his firm was at Richmond College, Va., when the insurance of the plaintiffs was taken; that he often had more than one of his sons working for him in the insurance business; that Robert E. Harris had solicited a great deal of business for the firm of Thomas B. Harris & Son; that he (Robert) solicited, with his knowledge, the insurance of the plaintiffs, took the applications therefor, and in pursuance thereof the two policies were issued through himself, T. B. Harris, as a member of the firm of Thomas B. Harris & Son, agents of the defendant, but that he had no knowledge of the facts and circumstances attending the soliciting and placing of the insurance, except what appeared in the application and policy of insurance, until after the loss occurred; that the special agent and adjuster of the defendant had frequently been in his insurance office at Culpeper, Va., and had there seen his several sons at work.

The trial court was of opinion that the evidence introduced by the plaintiffs did not show that Robert E. Harris occupied such a relation to the defendant company that it could be affected by knowledge acquired or declarations made by him whilst engaged in soliciting and taking the applications for the insurance in controversy, and refused to allow such evidence to go to the jury.

In this we are of opinion the trial court erred.

This question has been much discussed, but the better view now seems to be that the insurer is not only responsible for the acts of its general agents, but also for the acts of the clerks or employees of the agents, to whom they delegate authority to discharge their functions, within the scope of their agency.

Insurance companies know, or ought to know, when they appoint general agents, that, according to the ordinary course of business, they have clerks and other persons to assist them, and that their agents in many instances could not transact the business entrusted to them if they were required to give their personal attention to all of its details. It being necessary, therefore, and according to the usual course of business, for their agents to employ others to aid them in doing the work, it is just and reasonable that insurance companies should be held responsible not only for the acts of their agents, but also for the acts of their agents' employees, within the scope of the agents' authority.

It is no sufficient answer to this view to say that the insurers did not authorize their agents to delegate their authority to others. It may be that they did not do so expressly, but they appointed agents whom they knew, or ought to have known, would, according to the usage or the necessities of the business, engage the services of others in doing the work entrusted to them; and, having this knowledge, they will be held to have impliedly authorized their agents to do what was usual or necessary in the business.

The general rule, it is true, is that, when it is intended that agents shall have power to delegate their authority, it should be given them by express terms; but there are cases in which such authority may be implied, as where it is indispensable by the laws to accomplish the end, or it is the ordinary custom of trade, or it is understood by the parties to be the mode in which the particular business would or might be done. Story on Agency, sec. 14 (9th ed.).

" Generally," says May, in his work on Insurance, " agents of insurance companies authorized to contract for risks, receive and collect premiums, and deliver policies, may confer upon a clerk, or subordinate, authority to exercise the same powers. The service is not of such a personal nature as to come under the maxim *delegatus non protest delegare.* 1 May on Insurance, sec. 154 (3d ed.); also, sec. 154*a.*

Wood, in his work on Insurance, says : " Not only is the insurer responsible for the acts of its agent, but also for the acts of its agent's clerks, or any person to whom he delegates authority to discharge his functions for him. Of course the act must be done by some person authorized expressly or impliedly by the agent, and under such circumstances that the insurer knew, or ought to have known, that other persons would be employed by and to act for the agent." 2 Wood on Insurance, sec. 433 (2d ed.).

It was held in the case of *Bodine* v. *The Exchange Fire Insurance Co.*, &c., 51 New York 117, that an insurance agent can employ a clerk and authorize him to contract for risks, to deliver policies and renewals, to collect premiums, and to give credit therefor, and the act of the clerk in such cases is the act of the agent, and binds the company. In that case the clerk of the agent waived the pre-payment of a premium, and the company was held bound by it, although there was a condition in the policy of insurance that no insurance, whether original or continued, should be considered as binding until the premium was actually paid.

In the case of *Arff* v. *Star Fire Insurance Co.*, 125 N. Y.
57, the Court of Appeals of New York, Judge Peckham
delivering the opinion of the court, held that "an ordinary
agent of a fire insurance company has the power to employ
such clerks as may be necessary to discharge the usual busi-
ness of his agency, and any waiver which the agent *himself*
could make is to be attributed to him when made by his
clerk."

In that case a policy of insurance issued by the company
required the insured to notify the company of any other
insurance upon the property, and declared the policy void in
case of neglect to comply with that condition.

It also provided that "only such persons as shall hold the
commission of this company shall be considered as its agents
in any transaction relating to this insurance."

The plaintiff, having obtained other insurance on the pro-
perty, informed the person upon whose solicitation he made
the application for the policy, and he said it was all right.
That person, at whose solicitation he applied for the policy,
was employed to solicit insurance by a firm who were com-
missioned agents of the defendant company, having authority
to give permits for further insurance. He had a desk in their
office, and was paid for his services by a commission on the
business he procured. He testified that he worked for no one
except the defendant's agents. The plaintiff was non-suited.
The court held that to be error, and said that, if he was exclu-
sively employed by the agents of the company, he was not an
ordinary insurance broker, but one of the clerks or employees
of the company's agents, and, as such, was authorized to
receive notice and to consent to other insurance; and the
testimony as to his exclusive employment being contradictory,
the case should have been submitted to the jury.

In a later case decided by the same court the two cases
above referred to were cited with approval, and the doctrine

·laid down in them re-affirmed. In the last case the policy of fire insurance in question contained a condition that if the insured were not the sole owners of the property insured, or did not have title to the land on which it was situated in fee simple, and this fact was not expressed in the policy, it should be void. The assured held the land under an agreement to purchase. This fact was not expressed in the policy, but had been communicated to the clerk of the general agent of the insurer, who had been sent to make an examination of the premises preparatory to the risk. In an action on the policy it was held that notice to the sub-agent, while so engaged in soliciting the insurance, was notice to the company, and bound it to the same extent as though it had been given directly to the agent himself; and, this being so, the policy was not avoided by the condition in the policy. *Carpenter* v. *German-American Ins. Co.*, 135 N. Y. 298.

See *Continental Ins. Co.* v. *Ruckman*, 127 Ill. 364; *Hartford Fire Ins. Co.* v. *Josey*, 25 S. W. Rep. (Texas) 685; *Duluth Nat. Bank* v. *Knoxville Fire Ins. Co.*, 85 Tenn., at page 81.

The authority conferred upon the firm of Thomas B. Harris & Son constituted them general agents of the defendant company, for it is settled that a person authorized to accept risks, to agree upon and settle the terms of insurance, and to carry them into effect by insuring and renewing policies, must be regarded as the general agent of the company. 1 May on Ins., sec. 126 (3d ed.); *Manhattan Fire Ins. Co.* v. *Weill & Ullman*, 28 Gratt. 389; *The Continental Ins. Co.* v. *Ruckman*, 127 Ill. 364.

The evidence introduced by the plaintiffs tended to prove a state of facts which entitled the plaintiffs to prove any act or declaration of Robert E. Harris, whilst engaged in negotiating with the plaintiffs in reference to their insurance, which they would have had the right to prove if the act or declara-

tion had been made by Thomas B. Harris & Son, the agents, in person; and, if it appeared from the whole evidence that Robert E. Harris was the employee of Thomas B. Harris & Son, agents of the defendant, and was in the habit of soliciting insurance for them, and that he solicited the plaintiffs' insurance with the knowledge and assent, or by authority, of said agents, then his acts and declarations whilst negotiating the plaintiffs' insurance were the acts and declarations of the agents, and bound the defendant company to the same extent that they would if done or made by such agents in person.

It is unnecessary to consider in detail the several bills of exceptions taken by the plaintiffs to the action of the court in excluding evidence. It will be sufficient to say that any material evidence which tended to prove the acts or declarations of Robert E. Harris, whilst negotiating the plaintiffs' insurance, was admissible against the defendant to the same extent that the acts or declarations of Thomas B. Harris & Son, the commissioned agents of the defendant, would have been admissible if they had negotiated the insurance in person.

Neither is it necessary to consider whether the court erred in sustaining the defendant's demurrer to the evidence, as the judgment must be reversed, the verdict set aside, and a new trial awarded for the reasons hereinbefore stated.

*Reversed.*