BOARD OF EDUCATION OF BEREA RURAL SCHOOL DIST., HAMILTON COUNTY, ET AL., APPELLEES, *v.* BOARD OF EDUCATION OF HAMILTON COUNTY ET AL., APPELLANTS.

(Decided February 26, 1940.)

*Messrs. Maxwell & Ramsey,* for appellees.

*Mr. E. G. Schuessler* and *Mr. George Metzger,* for appellants.

MATTHEWS, J. This is an appeal on questions of law and fact by the Board of Education of Hamilton county, Ohio, from a judgment rendered against it in an action by the Board of Education of Berea Rural School District of Hamilton county, Ohio, perpetually enjoining it from putting into effect a resolution passed by it, on the 10th day of August 1937, providing for the consolidation of the Berea, Elizabethtown and Whitewater township rural school districts. The action in which this perpetual injunction was issued was filed on September 13, 1937, and a temporary restraining order was allowed on that day, which was made perpetual on final hearing on the 25th day of July 1939.

Within thirty days after the passage of the resolution of August 10, 1937, certain documents were filed with the defendant board purporting to be remonstrances of qualified electors of the territory affected by the consolidation. It is alleged in the petition that the remonstrants constituted a majority of the qualified electors, but this is denied by the defendants and no evidence was introduced to substantiate the allegation. By Section 4736, General Code, a majority of the electors are given the power to prevent the creation of a new school district out of existing districts by filing a written remonstrance. This power is not possessed by any electors less than a majority. It is not an authorized remonstrance unless it is by a majority. If it is not so signed, the board is justified in disregarding it, and proceeding to complete the creation of the new district. The board had jurisdiction to decide whether the document filed with it conformed to the statutory description. Its decision, of course, was subject to judicial review, but, in the absence of evidence that the document did conform to the statutory requirement of a written remonstrance, signed by a majority of the qualified electors, the court should not disturb the decision of the board to the contrary. We, therefore, conclude that the mere allegation that

a remonstrance was filed, without any evidence to support it, in the face of the defendants' denial, is no basis for enjoining the defendant board.

There is evidence that in 1936 the defendant county board prepared a diagram or map showing the location of all school districts in the county, as required by Sections 7600-1 to 7600-8, General Code, and that this diagram or map was submitted to and approved by the state director of education, and that this map showed the three school districts, and did not show any district resulting from the merger of the three. The evidence clearly shows that no new diagram or map was prepared or filed in 1937, and that no affirmative action was taken to continue the 1936 map as the plan of school organization for the year 1937. In 1938, however, there was communication between the county board and the state director of education. This related principally to a study of the public schools of Hamilton county under the supervision of the United States office of education and the Ohio state department of education. The report showing the results of this study was filed in the state department of education. Incorporated in it was a map or diagram showing, among other things, the school districts that would result from a reorganization recommended as a result of the survey. One of the recommendations was that district No. 14 should be created eventually to include the present Whitewater, Berea, Elizabethtown, Miami township, Cleves-North Bend, and Addyston districts, but, that "as the first step in the creation of the enlarged district there should be created a district consisting of Whitewater, Berea, and Elizabethtown." In a letter dated June 10, 1938, the superintendent of schools of Hamilton county wrote the state director of education that the county board had passed a "resolution adopting the recommendations contained in 'A Study of Local School Units Sponsored by the United

States Office of Education and the Ohio State Department of Education' as the plan of organization for the school districts of the Hamilton county school district for the ensuing year. We are enclosing herewith a map.'' The map enclosed was an exact copy of the one contained in the study.

It is the contention of the plaintiffs that as the defendant county board failed to adopt a plan for 1937 and file a diagram or map thereof with the state director of education, the plan adopted for 1936 continued in force in 1937 until a new plan was adopted; further, that by the letter of June 10, 1938, the county board reported that it had adopted a plan, and the map which was enclosed constituted such plan; and that the resolution of August 10, 1937, creating a district including the three districts of Berea, Elizabethtown Rural and Whitewater, was inconsistent with these two plans, and was, therefore, both beyond the power of the county board and void, initially, and also later abrogated by the filing of this plan in 1938, which plaintiffs contend was inconsistent.

These contentions present the questions of whether the county board did, in legal effect, adopt a plan in 1936; what the evidence shows that plan was; whether it was operative in 1937; whether a plan was adopted in 1938; what that plan was; and what the legal effect was upon the power of the court to take the proceedings in 1937 toward the eventual creation of one district out of these three existing districts.

Had the proceeding for the consolidation of these three districts taken place prior to the passage of the School Foundation Act in 1935 (Sections 7600-1 *et seq.,* General Code, 116 Ohio Laws, 587), there could be no doubt that the county board would have been within the jurisdiction conferred upon it by Section 4736, General Code. It is the claim of the plaintiffs that the provisions of this section have been and

are limited by the sections of the School Foundation Act, just referred to, and particularly by section 7600-7, General Code.

A reading of the entire School Foundation Act demonstrates that its primary purpose was to provide for the creation of a public school fund in the state treasury and a system of distribution to the schools in such a way as to promote efficiency and economy. The control to be exerted by the state director resulted largely through a power to veto any plan adopted by a county board during the years 1935, 1936, 1937 and 1938, and the discretion conferred upon him as to the distribution of this state fund. Indeed, it is expressly provided in Section 7595-1e, General Code, that a district that has failed to comply shall not be entitled to participate in the distribution except at the discretion of the state director. The main purpose, in this regard, was to give to the state director the power to grant or withhold state aid in order to insure an economical operation of the school system—not to vest in him a prior control of the discretion of the local county board in the exercise of the power vested in it by then existing laws. It is subsequent control by the power of veto and modification that is conferred by Section 7600-7, General Code. Accordingly, the act contained no language of repeal, and the purpose was declared to be to amend and supplement existing sections.

We believe *State, ex rel. Adsmond,* v. *Bd. of Edn. of Williams County,* 135 Ohio St., 383, 21 N. E. (2d), 94, is sufficient authority to sustain the conclusion that there was no repeal by implication. The School Foundation Act contemplates that for the years 1935, 1936, 1937 and 1938 the diagram or map filed each year shall supersede one another, so that at all times there would be a diagram or map controlling the operation of the schools. To hold that no action could be taken by the

county board during the year in which a diagram or map filed with and approved by the director of education was applicable, would result in taking all power of prospective modification from the county board for succeeding years. Such was manifestly not the intention of the Legislature.

Assuming that the evidence shows the adoption and approval of a map to control the school activities of 1936, we are of the opinion that such fact did not deprive the county board of the power during the year to prepare for the merger of these three districts; that, at most, it would be only a bar to the actual completion of the merger and operation thereunder until such time as the bar was removed by the adoption and approval of a map to which it would conform, or until the expiration of the bar by limitation as provided in the statute itself. The map of 1936 would, therefore, be no basis for granting a perpetual injunction.

There has been no repeal or rescission of the resolution of consolidation of August 10, 1937, but, it is said that by sending the letter and accompanying map to the state director in 1938, the board showed an intention to abandon it. It is our opinion that the letter which referred to the "study" showed an intent on the part of the board to make the school districts eventually conform to the map, rather than to have them conform immediately or during the year 1938. If this is not true, it is certainly true that it leaves the intent of the board in doubt. We discover no intent on the part of the director to adopt a map of his own in default of a map by the board. His intent was to approve the action of the board.

Assuming, however, that an inconsistent map was adopted and approved for the year 1938, that would disclose no intent to abandon the consolidation. It would show an intent to postpone completion and operation under it during that year. That also would

be no basis for the granting of a permanent injunction.

It, therefore, seems to us that if all the provisions of the School Foundation Act were still in operation and a duty rested upon the county board to prepare and file a map annually, that would be no reason for granting a permanent injunction. It would be a reason for restraining the board from completing the merger and operating the schools thereunder, until such a time as a map conformable thereto had been prepared by the board and approved by the state director. But, by the terms of Section 7600-7, General Code, itself, the duty of the board to prepare and file a map was imposed only for the years 1935, 1936, 1937 and 1938. And the duty of the state director to approve or adopt another map was limited to the same years. The power and duty have, therefore, expired by limitation and no longer exist. The statutory bar to the completion of the consolidation of the districts and operating the schools thereunder has disappeared with the passage of time.

For these reasons, we find on the issues in favor of the defendant, and a decree may be presented in accordance with this opinion.

*Decree accordingly.*

HAMILTON, P. J., and ROSS, J., concur.