STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY v.
V. C. MILLER.

January 26, 1953.

Record No. 4013.

Present, All the Justices.

The opinion states the case.

*John B. Browder, Lewis H. Hall, Jr.,* for plaintiff in error.

*Ralph T. Baker,* for defendant in error.

HUDGINS, C. J., delivered the opinion of the court.

V. C. Miller held an automobile insurance policy issued by the State Farm Mutual Automobile Insurance Company, providing several types of coverage, including liability for "Bodily Injury," "Property Damage," "Medical Payments," "Comprehensive," (Fire, Theft, etc.) and "Deductible Collision" (for damage to his automobile in excess of $50.00). On May 19, 1951, his automobile, while being operated by another with his consent, was struck by a railroad train and virtually destroyed. On the same day (May 19) Miller went to the office of the company in Newport News, filed proof of loss and made claim for damages to his automobile. Payment of the claim was refused. This action on the policy followed, resulting in a verdict and judgment for plaintiff in the sum of $1125. The writ of error was awarded to review that judgment.

The parties will be referred to as plaintiff and defendant, according to the positions occupied by them in the lower court.

Defendant's main contention is that plaintiff, on May 16, 1951, three days before his automobile was damaged, cancelled the collision coverage by executing and delivering to defendant's agent the following written request for cancellation:

"STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
BLOOMINGTON, ILLINOIS
"POLICYHOLDER'S REQUEST FOR CANCELLATION
Date *May 16, 1951*

"I, V. C. Miller of *21 Milford Rd*
(street address)
*Hilton Village*              *Va.*
(city or town)              (state)
do hereby request cancellation of Policy No. *342-347-F1-46* Is-

sued to me by the STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY covering a *47 Buick 2 dr sdn* automobile, Serial No. ...... Motor No. *47549885*
cancellation to be effective May 16, 1951
Policy is herewith surrendered.
Reason for request for cancellation: *Cancel $50.00 collision only.*
*Cancel SR eff 5-16-51 B5/21*

Signature of Policyholder *V. C. Miller*
Signature of Agent *William C. Jenkins"*

The above request was made on a printed form used by defendant. The words and figures italicized (other than plaintiff's signature) were written in the blank spaces, with pen and ink, by defendant's agent.

Plaintiff admits that he signed the request for cancellation, but contends that he is not bound thereby because (1) it was not delivered to defendant in accordance with the provisions of Section 20 of the policy, and, therefore, was not an effective cancellation; and (2) there was a mutual mistake in the preparation and execution of the written notice of cancellation.

The pertinent part of section 20 of the policy is:

"20. Cancelation. This policy may be canceled by the named insured by mailing to the company written notice stating when thereafter such cancelation shall be effective. This policy may be canceled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than five days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancelation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing."

The testimony is that plaintiff had paid the semi-annual premium of $41.90 ($23.65 for collision, and $18.25 for other coverages) which continued the policy in force until June 1, 1951. On May 16, 1951, he went to the office of defendant in Newport News, where he found Mrs. Bierend in charge. He told her he wished to cancel the collision coverage, "double the liability," and to renew or continue the other coverages. He paid her $18.25, for which she gave him a receipt, and in his presence she filled out the blank form of "request for cancellation" hereinbefore referred to, and passed it across the desk to plaintiff for

his signature. He thereupon signed and delivered it to her. On the same day she put this signed notice of cancellation in an envelope, addressed to the company at its home office in Bloomington, Illinois, and placed it "in the outgoing mail." She did not know whether it was mailed that afternoon or the next morning. The proof is that, in the ordinary course of mails, a letter mailed in Newport News and addressed to a party in Bloomington, Illinois, would be delivered in two or three days thereafter. On the request for cancellation appears a notation, indicating that the notice was received at the home office on Sunday, May 20, 1951.

This testimony tends to prove that the cancellation notice was mailed prior to May 19, the date of the collision; but even if the proof is not conclusive as to the date the notice of cancellation was mailed, the notice itself stated that the cancellation of the collision coverage was "to be effective May 16, 1951." Moreover, on this date it was delivered to the party in charge of defendant's office.

Plaintiff argues that that part of Section 20 of the insurance contract which provides that delivery of notice of cancellation "shall be equivalent to mailing," means delivery to defendant at its home office, and delivery to an agent or employee in the local office of defendant is not compliance therewith. This argument is unsound.

"An insurer is responsible not only for the acts and declarations of its general agents, within the scope of their authority, but also for the acts and declarations of the clerks and employees of such agents, to whom the latter delegate authority to discharge their functions, within the scope of the agents' authority, and while engaged about the business of the principal." *Goode* v. *Georgia Home Ins. Co.*, 92 Va. 392, 23 S. E. 744.

Plaintiff went to defendant's office in Newport News to transact his business with it. Mrs. Bierend was in charge of the office and transacted defendant's business with him. He had procured the insurance policy through defendant's agents and employees in the local office. All of his business dealings with defendant had been with parties in charge of this office.

An insurance agent's authority to bind a principal was discussed in *Virginia Auto Mutual Ins. Co.* v. *Brillhart,* 187 Va. 336, 46 S. E. 2d 377. There we said:

"To Huffman and Owens she was the Insurance Company.

Their only contact with it was through her. They had no knowledge of any limitations on her authority. So far as they knew she had full power and authority to protect their interests, and in so doing, to bind her principal.

        \*      \*      \*      \*      \*      \*

" 'The insurance agent, within the general scope of the business he transacts, is *pro hac vice* the insurance company. What he knows they know. What he does they do. He has power to bind and loose, and no limitation ·on· his power unknown to strangers will bind them.' *Coles* v. *Jefferson Ins. Co.*, 41 W. Va. 261, 23 S. E. 732, 733.

" 'The powers of the agent are, prima facie, coextensive with the business intrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals. An insurance company, establishing a local agency, must be held responsible to the parties with whom they transact business for the acts and declarations of the agent, within the scope of his employment, as if they proceeded from the principal.' *Union Mut. Ins. Co.* v. *Wilkinson*, 13 Wall (80 U. S.) 222, 235, 20 L. Ed. 617.

" 'The tendency of the courts at the present day is towards a liberal, rather than a strict construction of an agent's power.' Joyce on Insurance, section 425. *Harrison* v. *Provident Relief Ass'n*, 141 Va. 659, 126 S. E. 696, 40 A. L. R. 616."

If this were an action by plaintiff against defendant to recover the unearned premium, there is no doubt that his giving the cancellation notice to Mrs. Bierend would constitute a delivery effective to bind the company. By the same token, it bound him. It would be obviously unjust to hold the authority of the agent to accept delivery adequate when detrimental to the company's interest and inadequate when resulting in a financial benefit to the company.

Under the provisions of the policy either party had a right, by complying with its terms, to terminate the contract. The consent of the other party was not necessary to effect cancellation. In *Roberta Mfg. Co.* v. *Royal Exchange Assurance Co.*, 161 N. C. 88, 76 S. E. 865, it was said: "A request thus made operates to cancel the policy, even if the insurer absolutely refuses to permit it to be done."

In *State Farm Ins. Co.* v. *Pederson*, 185 Va. 941, 41 S. E. 2d 64, we said: "\* \* \* it is \* \* \* well settled that where a notice to

cancel a policy is given in accordance with its terms, the contract *ipso facto* terminated, and the obligation of the insurance company to return the unearned premium, if any, to the insured merely creates the relationship of debtor and creditor between the company and the insured with respect to that item * * *.''

The general rule seems to be that delivery of a notice to cancel an insurance policy is valid whether delivered to the company or to its authorized agent. *Victory Ins. Co.* v. *Schroeder,* 167 Okl. 516, 30 P. 2d 894; *Union Marine & General Ins. Co.* v. *Kuljis,* 70 F. 2d, 231; *Johnson* v. *Maryland Casualty Co.* (La. App.), 151 So. 95; *Manhattan Life Ins. Co.* v. *Allison,* 100 Colo. 1, 64 P. 2d 1265; *York, Rec.* v. *Sun Ins. Co.,* 66 Ind. App. 269, 113 N. E. 1021.

Delivery of notice of cancellation to Mrs. Bierend, the person in charge of defendant's local office, apparently clothed with authority to transact defendant's business, was delivery of the notice to defendant within the meaning of the cancellation clause of the policy.

Plaintiff's second contention is that a mutual mistake was made in writing in the request ''May 16, 1951'' as the effective date for cancellation of the collision coverage.

It is well settled that a written instrument, duly executed, is presumed to contain the true agreement of the parties, and that such writing stands higher in the scale of proof than parol testimony. While the courts have the authority to reform a written instrument on the ground of mutual mistake, such mistake must be established by the clearest and most satisfactory proof—not by a preponderance of the evidence, but beyond a reasonable doubt. 16 Michie's Jur., Rescission, Cancellation, and Reformation, sec. 32, p. 169.

Tested by this rule, the evidence in this record fails to establish a mutual mistake of the parties. Plaintiff relies wholly upon his own testimony, the substance of which is as follows:

On or about May 1, 1951, plaintiff received notice that his insurance contract would expire on June 1, 1951, unless the premium for a six months' period was paid on or before that date. On May 16, 1951, he went to defendant's office, presented the notice of the due date of the premium to the lady in charge and told her that he wished to discontinue, or cancel, the collision coverage in his policy, and to renew the other coverages. He did not mention the date on which he desired the cancellation, or

renewal, to become effective. It was his intention to discontinue the collision coverage at the end of the period for which he had paid, and to continue other coverages from that date. Upon being urged by defendant's agent to continue his collision coverage, he said he had been carrying such insurance for a number of years and had never had an accident, he was hard pressed for money, as his wife had been sick, he was in debt to a bank, and had to "cut corners."

Plaintiff's contention is, in effect, that he intended to permit the collision coverage to expire on June 1, 1951, and to renew his other coverages for a six months' period, beginning on that date; that the written request for cancellation presented to him by Mrs. Bierend did not contain a correct statement of this intention.

"Intent" is an operation of the mind. An intention is the purpose a party forms in his own mind. It can be conveyed to another by words or acts, and sometimes by the circumstances of the occasion. Plaintiff admits that he did not inform defendant's agent of his intentions. He admitted that Mrs. Bierend filled out a blank form for cancellation, in his presence, presented it to him for his signature, and that he signed it without reading it. He said that if he had read it, he would not have signed it with May 16, 1951 as the effective date of cancellation.

Mrs. Bierend testified that on the occasion in question plaintiff told her that he wanted to cancel his collision coverage as of that day—May 16, 1951. She further said that she and William C. Jenkins, another agent of defendant in the office at the time, tried, in vain, to persuade plaintiff not to cancel any part of his automobile insurance coverage, but after he had expressed a determination to cancel the collision coverage she, in his presence, filled out the blank form which he signed.

It is not claimed that defendant's agents induced plaintiff to sign the request for cancellation by deception or misrepresentation; or even that plaintiff told the agent to insert in the request for cancellation a different cancellation date from the one written. Cf. *Shipp* v. *Connecticut Indem. Co.,* 194 Va. 249, 72 S. E. 2d 343. Plaintiff had full opportunity to read the request for cancellation, but did not avail himself of that opportunity. He was negligent in failing to read it, and in the absence of fraud or mistake on the agent's part, he has no ground on which to avoid its effect. *Ashby* v. *Dumouchelle,* 185 Va. 724, 40 S. E. 2d 493; *Peoples Life Ins. Co.* v. *Parker,* 179 Va. 662, 20 S. E. 2d 485;

*Maryland Casualty Co.* v. *Cole,* 156 Va. 707, 158 S. E. 873; *Flannagan* v. *Mutual Ins. Co.,* 152 Va. 38, 146 S. E. 353; *Royal Ins. Co.* v. *Poole,* 148 Va. 363, 138 S. E. 487; 12 Am. Jur., Contracts, sec. 137, p. 628.

On May 25, 1951, defendant wrote plaintiff, stating that the collision coverage in the policy had been cancelled and enclosed a check for $1.84 for the unearned premium. Plaintiff did not cash or return the check to defendant.

As we view the record, the parol evidence is insufficient to overcome the weight that must be given the written request for cancellation of the collision coverage. The verdict of the jury is set aside, the judgment reversed, and final judgment entered for defendant.

*Reversed and final judgment.*