## Richmond

MARYLAND CASUALTY COMPANY v. JAMES E. CRAIG AND H. R.
FAUBER.

March 5, 1973.

Record No. 8040.

Present, All the Justices.

*Wayt B. Timberlake, Jr.* (*Timberlake, Smith, Thomas & Moses*,
on brief), for plaintiff in error.

*Lloyd T. Smith, Jr.* (*Tremblay & Smith*, on brief), for defendants
in error.

HARRISON, J., delivered the opinion of the court.

James E. Craig and H. R. Fauber, plaintiffs below, recovered a
judgment for $8,000 against Maryland Casualty Company (Com-
pany), representing the amount allegedly due them under a fire in-
surance policy issued by the Company. The policy insured an un-
occupied dwelling owned by Craig which was destroyed by fire. The
Company denied liability and Craig and Fauber brought action. At
the trial the Company moved to strike plaintiffs' evidence. The trial
court concluded that the issue was solely one of law, took the mo-
tion under advisement and discharged the jury. Thereafter the court
overruled the motion and, having been advised by the Company
that it did not intend to offer any evidence, awarded judgment to
the plaintiffs. The Company appeals this final judgment.

The evidence consists solely of the testimony of Craig and H. R.

Fauber. In April of 1970 Craig, who lives in Earlysville, Virginia, purchased a parcel of land in Augusta County on which was located a large frame dwelling that had been unoccupied for several years. He engaged Colin Thomas, a Staunton attorney, to represent him and asked if Thomas knew anyone who would make him a loan on the property. Thomas contacted James Fauber, a Staunton realtor and also a casualty insurance agent for the W. J. Perry Corporation (Perry), who in turn negotiated with H. R. Fauber regarding the loan.

H. R. Fauber went to the office of James Fauber and agreed to make Craig a $13,000 loan, provided James Fauber could get him insurance on the dwelling. James Fauber responded that "he thought it could be arranged" and gave him "assurance that there would be insurance on the property. . . ."

Thereafter Craig went to Staunton to close the transaction and for the first time met the Faubers. During the closing conference the subject of fire insurance on the dwelling was discussed, for such coverage was one of the conditions of the loan. He inquired about local insurance agencies and James Fauber replied that he would get the insurance for him. Craig testified that he made it very clear to all present that he did not wish to rent the house or to occupy it himself, and while he was hopeful it would sell within 90 days, the house was vacant and he intended to leave it vacant until he sold it. James Fauber's response to these statements was, according to Craig: "Well, that's no problem. We'll just put a 90-day vacancy permit on it and then I'll get it renewed for you."

After this exchange, the Faubers left the conference and Craig and Richard Smith, an attorney, proceeded with the closing. Craig told Smith that James Fauber had offered to get the insurance for him and asked Smith if Fauber was a reputable man. Smith responded that Fauber was going to place the insurance with Maryland Casualty through the Company's local agent, Perry, and advised the purchase. At Craig's request James Fauber was called and the insurance was obtained. A return telephone call was made by Fauber who quoted the premium as $20, and this amount was paid Perry from the proceeds of the H. R. Fauber loan.

The Company issued to Craig its fire policy for one year beginning April 27, 1970. The policy named James E. Craig as the insured, with a mortgage clause to H. R. Fauber, and provided cover- on a 2-story frame building in the amount of $8,000. Attached to the policy was a vacancy permit which reads:

"Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring while building described in this policy is vacant or unoccupied beyond a period of 90 consecutive days, which permitted period includes the sixty consecutive days allowed in printed conditions of this policy."

Copies of the policy were duly mailed to Craig and to H. R. Fauber. Subsequent to the issuance of the policy Craig was advised that the premium on this policy was in fact $38. Craig was billed for the balance due of $18 and paid it by his check dated August 10, 1970.

There were no further dealings between any of the parties until August 28, 1970, when the dwelling was totally destroyed by fire.

Neither Craig nor H. R. Fauber ever read the policy. Craig testified that he relied on James Fauber fully after the closing, for he "felt that I had satisfied Mr. H. R. Fauber's requirement and I felt comfortable about the entire matter, as pertaining to insurance".

The Company admits that the W. J. Perry Corporation is its agent and that at the time of the transaction the said James Fauber "was a sub-agent of W. J. Perry Corporation authorized to solicit and submit to said W. J. Perry Corporation applications for insurance". The Company contends, nevertheless, that Fauber's authority was not such as to bind the Company to any oral agreement or impute to it any knowledge of continuing vacancy beyond the period provided for in the policy. It says Fauber's authority as a solicitor is more limited in scope.

The authority of a subagent of an insurance company has long been held the equivalent to that of a general agent in the solicitation of insurance policies. In *Goode* v. *Ga. Home Insurance Co.*, 92 Va. 392, 395, 23 S. E. 744, 745 (1895) it was held:

"Insurance companies know, or ought to know, when they appoint general agents, that, according to the ordinary course of business, they have clerks and other persons to assist them, and that their agents in many instances could not transact the business entrusted to them if they were required to give their personal attention to all of its details. It being necessary, therefore, and according to the usual course of business, for their agents to employ others to aid them in doing the work, it is just and reasonable that insurance companies should be held responsible not only for the

acts of their agents, but also for the acts of their agents' employees, within the scope of the agents' authority."

This principle was reaffirmed in *Royal Indemnity Co. v. Hook*, 155 Va. 956, 968, 157 S. E. 414, 418 (1931), where it was said: " '. . . notice given a subagent or clerk of matters vitiating a policy will be imputable to the company, the same as though communicated to the regularly appointed agent.' "

Assuming that James Fauber's authority as subagent was that of a solicitor only, this in itself works no limitation on his authority as the Company's representative in the transaction under review. " '. . . [B]efore the execution of a policy the powers and authority of a soliciting agent are coextensive with the business intrusted to his care, so that his positive knowledge of material facts is chargeable to his principal.' " 155 Va. at 965, 157 S. E. at 417.

Code § 38.1-292 provides that:

"A person who is authorized by any company to solicit insurance or applications therefor shall, in any controversy between the insured or his beneficiary and the company, be held to be the agent of the company which issued the insurance solicited or applied for, anything in the application or policy to the contrary notwithstanding."

It is true that James Fauber acted as Craig's agent in obtaining the loan from H. R. Fauber, and that this relationship continued until the loan transaction was completed and James Fauber was compensated for his services as a "finder". However, it is equally clear that James Fauber was also acting in his capacity as a representative of the Company and Perry when he assured Craig at the closing meeting that he could obtain the insurance, and when he later had the policy executed. Craig and H. R. Fauber thus dealt with James Fauber as an insurance agent, the representative of Maryland Casualty and the Perry insurance agency. James Fauber was the only individual with whom Craig and H. R. Fauber, and the Company and Perry, had any contact regarding the issuance of the fire insurance policy on Craig's dwelling. "One who deals with an agent and has no knowledge of any limitations upon his power may deal upon the faith of his ostensible powers, whether this agency be general or special." *Royal Indemnity Co. v. Hook, supra*, at 968, 157 S. E. at 418. *See also Home Beneficial Asso. v. Clark*, 152 Va. 715, 148 S. E.

811 (1929); *Mutual Life Ins. Co.* v. *Brown*, 137 Va. 278, 119 S. E. 142 (1923).

Notwithstanding the provisions of the vacancy permit attached to the fire insurance policy, if James Fauber at the time of the execution of the policy knew that the dwelling insured would remain vacant beyond the ninety-day period provided for therein, then the Company is charged with such knowledge, and, as we observed in *Ruffin* v. *U. S. Fire Ins. Co.*, 208 Va. 463, 464, 158 S. E. 2d 672, 673-74 (1968):

> "We have consistently held that an insurance company cannot rely on a provision of its policy to defeat coverage if the facts making the provision operative were known to the company when it issued the policy. . . ."

We further noted in *Ruffin* that this was the position taken in the landmark case of *Georgia Home Ins. Co.* v. *Kinnier*, 69 Va. (28 Gratt.) 88 (1877) and that it "was based, at least in part, upon waiver or estoppel by virtue of the conduct of the insurance company's agent". 208 Va. at 466, 158 S. E. 2d at 674. There the insurance company's agent, who knew that the premises to be insured were unoccupied and would not be again occupied by the family, was asked when the policy was delivered "if the policy was all right, and if the house was burned would the money be paid", and the agent replied "it was all right, and the money would be paid". By 1904 this court could say:

> "On a similar state of facts, this court has so often decided that the conduct of the agent estops the insurance company from asserting the forfeiture relied on that it may be stated as established law in this jurisdiction." *Virginia Fire and Marine Ins. Co.* v. *Richmond Mica Co.*, 102 Va. 429, 432, 46 S. E. 463, 464.

James Fauber knew that the dwelling to be insured was vacant at the time of his conference with H. R. Fauber, when he assured the latter that fire insurance would be obtained on the property. He knew of the vacancy at the time of the closing meeting with Craig, and Craig at that time told him he had no intention of renting the house or occupying it himself but that his intention was to sell, if and when he could. James Fauber knew that the $13,000 loan made by H. R. Fauber to Craig, for which adequate fire coverage on the

dwelling was a prerequisite, was payable two years after date. Craig and H. R Fauber were led to believe by James Fauber's express representations and statements that the vacancy posed "no problem" and that the dwelling which burned was fully covered against loss or damage by fire, at least for the life of the policy. They accepted the policy mailed to them by the Company with that understanding and belief.

In the *Ruffin* case, *supra*, we held that the insurance company was not estopped from relying on the occupancy clause of its policy. Knowledge of a "possibility" the dwelling would remain vacant beyond the period permitted by the policy's terms was not sufficient, we said, to charge the agent with knowledge of any continuing vacancy, and furthermore the agent there did nothing to lead the policyholder to believe that the insurance company would not rely upon the occupancy clause, if it should become applicable at some future time. We are presented here with an agent who had knowledge that the vacancy would continue indefinitely, at least for the duration of the policyholder's ownership of the insured dwelling, and who led the beneficiaries to believe that the occupany clause of the policy would not be relied upon by the Company.

The conduct of the Company's subagent James Fauber was such as constituted a waiver of the condition found in the policy that it should be vitiated if the premises insured remained vacant for a period of more than ninety days. A breach of such condition cannot be relied on here to defeat a recovery by appellees Craig and H. R. Fauber upon the policy.

The judgment of the lower court is

*Affirmed.*