GLENN MORRIS

V.

ROYAL GLOBE INSURANCE COMPANY, ET AL.

Record No. 821494

January 17, 1986

Present: All the Justices

*Morton B. Spero* for appellant.

*Henry H. McVey, III; William D. Bayliss (W. F. Drewry Gallalee; Robert E. Brewbaker, Jr.; Browder, Russell, Morris & Butcher; McGuire, Woods & Battle*, on briefs), for appellees.

RUSSELL, J., delivered the opinion of the Court.

This is an action in tort for negligence arising out of an insurance agent's alleged failure to provide requested insurance coverage. At a bench trial, after all plaintiff's evidence on the issue of liability had been submitted, the court entered final judgment for the defendants. The plaintiff's appeal raises the question of sufficiency of the evidence.

In 1975, Glenn Morris, a retired army officer operating a farm in Brunswick County, purchased a new combine for $29,518.00. The combine was covered by fire insurance provided by the company which financed the purchase. In 1977, Morris decided to obtain insurance on his other mobile farm equipment and consulted E. W. Johnson, who was President and General Manager of Southco Corporation, an independent insurance agency trading as Southside Insurers. Southco wrote insurance for various companies, including Royal Globe Insurance Company.

Johnson suggested a "mobile agricultural equipment floater policy" which would cover equipment up to the policy amount without listing the specific items covered. In order to determine the total value of the items to be covered, Morris made a handwritten list of his major items of equipment with their estimated values, arriving at a total of $21,500. Because Morris owned some additional small items, the parties agreed on a total of $22,500. The combine, still covered under the finance company's policy, was omitted.

Southco obtained a policy from Royal Globe and mailed it to Morris. It covered unscheduled "mobile agricultural machinery

and equipment" up to $22,500. It contained a specific exclusion which read: "This policy does not insure: . . . (g) Cotton pickers and harvester-thresher combines." Later in 1977, Morris requested an increase in the policy amount because "[he] had made some additional purchases" and because of "this inflationary spiral." The policy was increased to $28,500.

In 1978, Morris paid the original debt financing the combine, which terminated the finance company's insurance coverage. He testified that he telephoned Johnson on June 8, 1978, and told him that he desired an increase of $10,000 in his Royal Globe policy to cover the value of the combine, and that Johnson assured him that it would be covered, effective immediately. Johnson denied this version. Morris subsequently received from Southco an endorsement increasing the Royal Globe policy amount to $38,500. The policy did not list the combine specifically and continued the exclusion for unlisted "harvester-thresher combines." Morris testified that he had never read the policy or any of the endorsements, but relied entirely on Johnson's assurances.

In 1981, the combine was completely destroyed by fire. Morris reported the loss to Johnson, who checked the policy and advised Morris that there was no coverage for the combine. Morris filed a formal proof of loss, but Royal Globe denied coverage.

Morris brought this action against Johnson and Royal Globe, alleging that Johnson was an agent of Royal Globe acting within the scope of his authority and that he had negligently failed to provide the insurance Morris had ordered. Later, Southco was added as an additional defendant. The motion for judgment did not plead any cause of action based on breach of contract.

At trial, Morris testified, then called Johnson and another Southco employee, Maxey Peebles, as adverse witnesses, and rested. The defendants moved to strike the evidence. The court inquired whether all evidence on the issue of liability had been submitted. Upon being assured that it had, the court entered final judgment for the defendants. The court stated: "Mr. Morris, I feel that you failed to prove your case . . . . I just don't feel you've proven any negligence. Simply that."

Morris assigned error to the court's deciding an issue based upon conflicting evidence at the close of the plaintiff's case on a motion to strike. On appeal, however, he conceded that the court committed no error in ruling at that stage because all evidence bearing on liability was then before the court. Our inquiry, there-

fore, is whether there was evidence to support the court's ruling, from the same perspective as if it had been made at the close of all the evidence.

The crucial issue is whether Morris' version of his telephone conversation with Johnson on June 8, 1978, was unrefuted.

> A trier of fact must determine the weight of the testimony and the credibility of witnesses, but may not arbitrarily disregard uncontradicted evidence of unimpeached witnesses which is not inherently incredible and not inconsistent with facts in the record, even though such witnesses are interested in the outcome of the case.

*Cheatham v. Gregory*, 227 Va. 1, 4-5, 313 S.E.2d 368, 370 (1984) (citations omitted). Morris contends that his evidence concerning the June 8, 1978 conversation was uncontradicted by any other evidence and was neither inherently incredible nor inconsistent with any facts in the record. He says that the testimony of the only other witnesses, Johnson and Peebles, was entirely negative, casting no light upon the issue either way. He argues that their testimony was merely to the effect that they did not recall the conversation and, thus, did not contradict his version.

Morris testified as follows:

Q. Now, what did you do on June 8, 1978?

A. I called Mr. Johnson and told him I wanted to increase my coverage by $10,000.00.

Q. Do you recognize Mr. Johnson's voice when you hear it on the telephone?

A. Yes.

Q. Are you certain that it was Mr. Johnson that you spoke to that day?

A. Absolutely.

Q. Would you please tell the Judge what the substance of your conversation on — in June of '78 was with Mr. Johnson?

A. Well, it was a very, very brief conversation. I told him I wanted to increase it by $10,000.00. And he said, well, you have, you know, pretty good coverage. Why do you want to increase it?

> I said because I want to cover my combine. It's worth more than $28,000.00.
>
> Q. Are you certain that you told Mr. Johnson that the purpose of the increase was to cover your combine?
>
> A. Yes, sir.
>
> Q. And what did Mr. Johnson tell you?
>
> A. He said, well, you are covered effective immediately.

Morris testified that he had no recollection of discussing the matter with anyone other than Johnson. Johnson, called as an adverse witness, testified:

> Q. Sir, do you have any specific recollection of any conversation that took place, if any, between you and Mr. Morris with respect to that $10,000.00 increase?
>
> A. I have no recollection. I am confident that there was no conversation between Mr. Morris and myself regarding the $10,000.00 increase.
>
> Q. There's a difference, sir. You have no recollection or you are stating as a positive fact that you never spoke to Mr. Morris?
>
> A. I am stating as a positive fact that I have no memory of any conversation with Mr. Morris whatsoever concerning the $10,000.00. I am aware of a conversation with other persons within my office. I am aware of the fact — let me rephrase that, please. I am aware of the fact that there was a communication between Mr. Morris and our office, *but it was not with me, sir.*
>
> Q. Do you know who — with whom it was?
>
> A. My records indicate that it would have been with Maxey Peebles.

(Emphasis added).

Peebles, called as an adverse witness, testified that there was a notation in his handwriting in Southco's file that Morris' coverage was to be increased by $10,000, but that no reason for the change was stated. He also testified that he had written to Royal Globe to request an endorsement increasing the coverage. He said, however, that he had no recollection one way or the other of any conversation with Morris, or with anyone else, concerning the reason

for the increased coverage. He had no recollection of any mention of Morris' combine.

Morris argues that his positive testimony could not be refuted by the statements of Johnson and Peebles to the effect that they did not recall the events to which Morris had testified. Characterizing the testimony of Johnson and Peebles as "negative," Morris relies on *Va. Auto Mut. Ins. Co. v. Brillhart*, 187 Va. 336, 346, 46 S.E.2d 377, 382 (1948), for the proposition that one who does not recall an event does not contradict, refute, or overcome positive testimony that the event occurred. Thus, says Morris, his version stands undisputed, and makes a *prima facie* case of vicarious liability on Royal Globe's part pursuant to our holding in *Maryland Casualty Co. v. Craig*, 213 Va. 660, 194 S.E.2d 729 (1973).

While Peebles' testimony, regarding any discussion of the combine, may be characterized as negative, the same may not be said of Johnson's testimony. The testimony of a witness is to be considered as a whole. "A damaging statement made in one part of his testimony must be considered in the light of an explanation of such statement made in a later part of his testimony." *VEPCO v. Mabin*, 203 Va. 490, 494, 125 S.E.2d 145, 148 (1962). It is for the fact finder to determine whether it will accept such an explanation or clarification. *Id.*

Johnson testified (1) that he had no recollection of the conversation Morris had described, (2) that he was confident that there had been no such conversation, and (3) that he was aware of a conversation between Morris and someone else in the office, but said, "it was not with me, sir." The first of these statements, standing alone, is truly negative testimony, entitled to no weight and creating no conflict in the evidence to be resolved by the trier of fact. The second and third, however, are positive denials of Morris' version, creating a direct conflict in the evidence. *N. & W. v. Greenfield*, 219 Va. 122, 130-31, 244 S.E.2d 781, 785 (1978); *National Union Fire Ins. v. Bruce*, 208 Va. 595, 598, 159 S.E.2d 815, 818 (1968); *White v. Southern Ry. Co.*, 151 Va. 302, 312-17, 144 S.E. 424, 426-28 (1928).

Accordingly, we hold that the issue of negligence was submitted to the court on conflicting evidence. The issue was thus resolved by reference to the credibility of the witnesses, a determination within the exclusive province of the trier of fact. Because

there was credible evidence to support this determination, we will not disturb it on appeal. The judgment will be

*Affirmed.*