# EQUITABLE VARIABLE LIFE INSURANCE COMPANY

## v.

## WALLACE J. WOOD

Record No. 841572

November 25, 1987

Present: All the Justices

*Douglas L. Guynn (Wharton, Aldhizer & Weaver*, on briefs), for appellant.
*Karen L. Geary* for appellee.

WHITING, J., delivered the opinion of the Court.

In this case, we decide whether an insurance policyholder effectively cancelled her life insurance policy when she mailed a notice of cancellation to her insurance agent's office at his direction, rather than to the place specified in the policy where "premiums and requests [should be sent] . . . unless instructed otherwise."

Wallace J. Wood, beneficiary under his daughter's life insurance policy, filed this action to recover upon that policy after his daughter's death. The insurance company filed a motion for summary judgment upon stipulated facts, contending the policyholder had cancelled the policy before her death. The trial court granted the beneficiary's cross-motion for summary judgment, holding that the policy had not been cancelled. The case is now before us on this single issue.

In 1976, Sharon Wood (Wood) purchased a life insurance policy from Equitable Variable Life Insurance Company (Equitable) through its agent, Milton Adelman (Adelman). That policy was still in effect in September, 1981 when Adelman received an application from Wood for an additional life insurance policy of $50,000 and a check for the first month's premium.

On October 27, 1981, Equitable released the additional policy to Adelman for delivery to Wood. When Adelman and Wood met on December 17, 1981, Wood told Adelman she did not want to continue to carry the additional policy, but she was uncertain whether she would follow Adelman's suggestion to reduce the coverage from $50,000 to $25,000. Adelman retained the policy so that, in the event Wood decided to reduce the coverage, he could forward it to the regional office of the company for amendment.

Adelman called Wood on December 30, 1981, to ask if she wanted the reduced coverage. She said she did not. Adelman agreed to send Wood the necessary forms to cancel the policy.

On January 5, 1982, Adelman sent Wood a federally required "Request for Withdrawal" and a "Notice of Withdrawal Right," which gave her "10 days from the date of mailing of this notice . . . to return the policy for cancellation." In his cover letter, Adelman told Wood to mail the executed form to him and he would return the policy "to Equitable for cancellation upon receipt of your signed form."

Wood signed the form and mailed it to Adelman on January 12, 1982. The printed material on the form provided in part:

> I hereby return the policy numbered above (the 'policy') for cancellation and request a full refund of the premium paid by me for the policy. I hereby release EVLICO from any and all claims arising out of or in connection with the sale or issuance of the policy and I hereby acknowledge that EVLICO's sole liability with respect to the policy is the refund to me of the premium paid for the policy.
>
> . . . .
>
> I have not yet received the policy and should it be received, I will return it to EVLICO.

Wood was killed in an airplane crash on January 13, 1982, the day after she mailed the form. Adelman received the form on either January 13 or 14, 1982. The regional service center of Equitable, the office named in the policy to which premiums and requests should be sent, did not receive these papers from Adelman until January 22, 1982. On January 25, 1982, Equitable mailed the premium refund check to Wood's residential address.

The beneficiary argues that Adelman was Wood's agent for the purpose of mailing the policy to the company for cancellation. This argument is contrary to Code § 38.2-1801. This is a controversy between a beneficiary and an insurer. By the express terms of this Code section, Adelman, who was "authorized . . . to solicit . . . insurance . . . [was] the agent of the insurer." *Id.*

Equitable recognizes that the policy Adelman retained and the forms which Adelman forwarded to Wood provide a notice of cancellation should be sent to its regional service center in Columbus, Ohio. However, Equitable contends a notice of cancellation may

be sent to a different address under the language of the policy, if the insured is "instructed otherwise," and its agent, Adelman, instructed Wood "otherwise." The beneficiary argues that under the express language of the policy only a company officer could "direct otherwise." Therefore, Adelman had no authority to tell Wood to mail the cancellation notices to him.

 There is little doubt Wood thought she had done all that was necessary to cancel the policy and get a full refund of the premium. The beneficiary contends the notations in Adelman's letter and the forms Wood signed indicated the policy was to be sent to Equitable "for cancellation," and implied a cancellation would only be effective when received at Equitable's administrative office. Wood signed the withdrawal form by which she "hereby release[d]" Equitable from all claims on the policy, and "hereby acknowledge[d] that [Equitable's] sole liability with respect to the policy" was for refund of the premium. This language effectively terminated the policy coverage and transformed Equitable's and Wood's relationship from insurer-insured to debtor-creditor when Wood mailed the signed form to Adelman.

In oral argument, counsel for the beneficiary conceded that if Wood had been suing to recover the premium, Adelman's apparent authority[1] would have bound Equitable to this method of cancelling the policy. There is ample case authority supporting that principle. *See e.g., Ampy* v. *The Metropolitan Casualty Insurance Co. of New York*, 200 Va. 396, 402, 105 S.E.2d 839, 845 (1958); *Virginia Auto Mut. Insurance Co.* v. *Brillhart*, 187 Va. 336, 344-45, 46 S.E.2d 377, 380-81 (1948). Should we apply a different rule when Adelman was acting within the scope of his apparent authority, but the beneficiary seeks to avoid the policyholder's reliance upon that authority because of her intervening death?

---

[1] While Wood's insurance policy and the contract between Adelman and Equitable limited Adelman's authority to that of a soliciting agent, Wood had no notice of this limitation. The stipulation does not indicate that Wood read the policy during Adelman's conference with her, and he did not leave the policy with Wood. The application Wood signed made no reference to Adelman's authority, except to say no agent could modify the agreement or Equitable's requirements. Nothing in the application indicated *only* Equitable's regional service center had the authority to cancel the policy. Thus, Adelman had the apparent authority to bind the company to refund the premium. *See Maryland Casualty Co.* v. *Craig*, 213 Va. 660, 663-64, 194 S.E.2d 729, 732 (1973); *cf. Elliott* v. *Interstate Life*, 211 Va. 240, 245, 176 S.E.2d 314, 318 (1970).

■ Restatement (Second) of Agency § 292 (1957) states in pertinent part, "[t]he other party to a contract made by an agent, . . . acting within his . . . apparent authority . . . is liable to the principal, as if he had contracted directly with the principal." Restatement (Second) of Agency § 8 comment d (1957) points out that when an agent, acting within the scope of his apparent agency, enters into a contract with a third person "the principal becomes immediately a contracting party, with both *rights* and liabilities to the third person." (Emphasis added.)

While we have never addressed this issue, we have recognized the logic and justice of the Restatement rule in our previous opinions. In *Ampy*, although we held the cancellation was in accordance with the terms of the policy, we suggested that if a policyholder could bind the insurance company to a cancellation of the policy by notifying the agent, it would be "inequitable" not to bind the insured to a cancellation notice by the agent. 200 Va. at 402, 105 S.E.2d at 845. In *State Farm Mutual Automobile Ins. Co. v. Miller*, 194 Va. 589, 74 S.E.2d 145 (1953), we bound an insured to his notice of cancellation to a local insurance agent with authority to bind the company. We noted:

> If this were an action by plaintiff against defendant to recover the unearned premium, there is no doubt that his giving the cancellation notice to Mrs. Bierend would constitute a delivery effective to bind the company. By the same token, it bound him. It would be obviously unjust to hold the authority of the agent to accept delivery adequate when detrimental to the company's interest and inadequate when resulting in a financial benefit to the company.

*Id.* at 593, 74 S.E.2d at 147-48.

We hold that the "request for withdrawal" cancelling the policy in the manner Adelman instructed bound Wood and Equitable. Accordingly, we will reverse the ruling of the trial court and enter final judgment in favor of Equitable.

*Reversed and final judgment.*

RUSSELL, J., dissenting.

The majority opinion states valid legal principles, but they are entirely inapplicable to the facts of this case. The policy itself provides:

> You may examine this policy and if for any reason you are not satisfied with it, you may cancel it by returning the policy with a written request for cancellation *to our Administrative Office* . . . . If you do this, we will refund the premium that was paid.
>
> . . . .
>
> The address of our Administrative Office is shown on page 3. You should send premiums and requests to that address *unless instructed otherwise.* (Emphasis added.)

On page three of the policy, there appears:

ADMINISTRATIVE OFFICE: EQUITABLE VARIABLE
 LIFE INSURANCE
 COMPANY
 EAST CENTRAL
 SERVICE CENTER
 P. O. Box 1122
 COLUMBUS, OH 43216

The sole issue in the case is whether the insured was "instructed otherwise."

When the insured indicated her desire to cancel the policy, the agent sent her two forms, one captioned "Notice of Withdrawal Right," the other captioned "Request for Withdrawal." The "notice" provided: "Should you desire to exercise this right of cancellation, complete the enclosed form and return your policy *as outlined in the instructions on the form* . . . ." (Emphasis added). The "request" form contained the following:

- Instructions -
Please Read Carefully

. . . .

2. Mail this notice together with your policy (if received by you) to:

Equitable Variable Life Insurance Company
[See Address of Administrative Office Above]

At the top of the form is typed:

Administrative Office
East Central Service Center
P. O. Box 1122
Columbus, OH 43216

The agent's letter to the insured, which sent her the forms described above, did not instruct her "otherwise." On the contrary, the agent wrote to the insured from his office in Rockville, Maryland, but his letter concluded: "P.S. I have the EVLICO policy in your folder which *I will return to Equitable for cancellation* upon receipt of your signed form." (Emphasis added).

Thus, the contractual provisions governing cancellation, which existed between insurer and insured, required that cancellation would be effective only when the requisite notice was received in the insurer's administrative office in Ohio. The agent, whatever his apparent or actual authority may have been, did nothing to alter those contractual provisions. Rather, he informed the insured *in writing* that he would forward the papers to the *insurer* for cancellation. That is a far cry from indicating to the insured that cancellation would become effective upon his receipt of the papers at his office in Maryland.

The parties entered into a stipulation of fact. It is to the same effect: "[The agent] would testify that he instructed [the insured] to return the Request for Withdrawal to him *so that he could then forward to the Regional Service Center the Request for Withdrawal together with the policy . . . .*" (Emphasis added).*

---

* The majority opinion lays stress upon a concession by counsel in response to a question from the bench during oral argument, wherein counsel opined that if the insured had sued to recover the premium, the agent's apparent authority would have bound the insurer to effect a cancellation upon receipt by the agent. For the reasons stated above, I think that opinion was erroneous under the facts of this case. In any event, the "concession," if such it was, was a conclusion of law, not a stipulation of fact. We are not bound by the opinions of counsel concerning questions of law, even where opposing counsel agree. *Tuggle* v. *Commonwealth*, 230 Va. 99, 111 (n. 5); 334 S.E.2d 838, 846 (1985).

I therefore conclude that the provisions of the policy continued to govern the relationships between the parties, that the agent did nothing to vary those provisions, and that the cancellation, which was not received in Equitable's administrative office until nine days after the death of the insured, never became effective. Accordingly, I would affirm.

CARRICO, C.J., and POFF, J., join in dissent.