Robert A. COLEMAN, Individually and as surviving spouse and next of kin of Verona Grace Coleman, Deceased, Plaintiff-Appellee,

v.

Lawrence D. HOLECEK, Defendant,

and

Allstate Insurance Company, Garnishee-Appellant.

No. 75–1382.

United States Court of Appeals, Tenth Circuit.

Sept. 27, 1976.

Charles S. Fisher, Jr., Robert D. Ochs, Topeka, Kan. (Fisher, Ralston & Ochs, Topeka, Kan., on the brief), for plaintiff-appellee.

Herbert A. Marshall and William T. Nichols, Topeka, Kan. (Marshall, Hawks, McKinney & Hendrix, Topeka, Kan., on the brief), for garnishee-appellant.

Before LEWIS, Chief Judge, McWILLIAMS, Circuit Judge, and ZIRPOLI *, District Judge.

ZIRPOLI, District Judge.

This is a garnishment proceeding initiated by Robert A. Coleman against the Allstate Insurance Company. Coleman seeks to garnish a debt owed by Allstate to Lawrence D. Holecek arising out of Allstate's allegedly wrongful refusal to defend Holecek in a personal injury and wrongful death action instituted against Holecek by Coleman. The district court found that Allstate

---

* Of the Northern District of California, sitting by designation.

wrongfully refused to defend the suit and awarded judgment in favor of Coleman in the amount of $323,117.20, including an award of $20,000 in attorney's fees. Allstate now appeals that judgment. We affirm.

*Background*

On March 4, 1973, Lawrence Holecek went to the Lancaster, California, office of the Allstate Insurance Company and purchased an automobile liability insurance policy which provided that the premium on the policy was to be paid in ten installments. Holecek paid the first premium on the day that he purchased the policy; the second premium was to be paid by his father in early April after Holecek had been transferred to Fort Leavenworth, Kansas. Believing that two installment payments had been paid on the policy, Holecek visited the Allstate office in Leavenworth, Kansas, on April 11 and informed the agent there that he wanted to let his insurance expire when his next installment came due. The agent gave Holecek a form known as RD–42 and told him to sign it. Rather than providing for expiration of the policy at some future date, that form provided for *immediate* cancellation of the policy. Holecek signed the form without reading it and it was subsequently sent to Allstate's regional office in Pasadena, California.

The notice of cancellation was not received by the Allstate office in California until April 16. In the meantime, the following events occurred: On April 12 Holecek received a notice from Allstate informing him that he was in arrears in his payments and that unless he paid the amount past due, his coverage would be cancelled effective April 26.[1] Two days later, on April 14, Holecek was involved in the automobile collision which gave rise to this litigation. On April 16 Holecek's father reported the accident to the Allstate office in

Lancaster, California, and at the same time paid the over-due second installment on the policy. Allstate accepted the payment on the past-due installment, notified its Kansas City office of the accident, and set up a file on the case. On April 17 the Allstate computer verified that Holecek was covered by an Allstate policy. Coverage was again verified by the computer on May 10.

After investigating the situation Allstate concluded that Holecek was probably liable for the accident. Allstate contacted Coleman and his attorney, informed them that Holecek was covered by Allstate, and agreed in writing to pay for the property damage to Coleman's car. After Coleman instituted his tort action against Holecek, Allstate instructed Holecek's attorney to send the complaint and summons to the Allstate claims office. In so instructing Holecek's attorney, Allstate made no disclaimer of coverage and sought no reservation of rights with respect to the question of policy coverage. Allstate's counsel thereafter obtained an extension of time in which to answer Coleman's complaint for the specific purpose of determining whether the suit could be settled without further legal proceedings. Then on June 18 Allstate denied coverage and withdrew from the case claiming that Holecek cancelled his policy on April 11. The trial court subsequently entered judgment against Holecek in the amount of $353,117.20, including an award of $50,000 in punitive damages. Coleman then instituted this garnishment proceeding against Allstate alleging that Allstate wrongfully and in bad faith failed and refused to defend Holecek in the tort action.

After a trial to the court, the court found that Allstate's failure and refusal to defend Holecek was grossly negligent and in bad faith. The court entered judgment against Allstate in the amount of $303,117.20, even though Allstate's liability under the policy

---

1. Apparently Holecek's father never made the promised payment. Thus had Holecek not visited the Allstate office on April 11, according to the notice of April 12, his insurance coverage would have remained in effect at least until

April 26. Since the accident which precipitated this action occurred on April 14, one of the crucial issues in the case is whether Holecek's signature on Form RD–42 constituted a valid cancellation of the policy.

was limited to $100,000.[2] The court also awarded Coleman attorney's fees in the amount of $20,000 pursuant to Kansas Statutes Annotated 40–256. This appeal followed.

*Issues Presented*

This case presents four issues on appeal: 1) whether the trial court erred in admitting parol evidence concerning Holecek's conversation with the Allstate agent at the time he signed Form RD–42; 2) whether the court erred in holding that even if the policy was effectively cancelled on April 11, Allstate nevertheless waived its right to assert that cancellation as a defense, or alternatively, that Allstate was estopped from raising that defense by its assumption of the defense of the tort action; 3) whether the court erred in awarding judgment against Allstate in excess of the policy limits; and 4) whether the trial court erred in awarding attorney's fees in a garnishment proceeding. Because we conclude that the trial court correctly held that the policy was not cancelled on April 11, we need not reach the issues of waiver and estoppel.

*The Admission of Parol Evidence*

The trial court held that Holecek's signature on Form RD–42 did not effectively cancel his insurance policy because there was no meeting of the minds concerning the effective date of the cancellation. This holding was based on Holecek's uncontradicted deposition testimony that at the time he made arrangements to cancel the policy he informed the Allstate agent that "I wanted my insurance to run out when the money ran out." Holecek Deposition at 10. Because the insurance agent did not fill out Form RD–42 in accordance with Holecek's wishes and instead made the cancellation effective immediately, the trial court held that there was no meeting of the minds sufficient to cancel the policy.

Allstate contends that when Holecek signed Form RD–42 he executed a unilateral contract which effectively cancelled the policy on April 11 at 4:40 p. m. Accordingly, Allstate argues that the trial court violated the parol evidence rule in admitting testimony designed to alter the terms of the written unilateral contract. However, the parol evidence rule does not apply to evidence introduced to show that a contract was void or voidable, *Prophet v. Builders, Inc.,* 204 Kan. 268, 462 P.2d 122 (1969); 3 *Corbin on Contracts* § 573 at 359–60; § 580 at 438, and it was for this purpose that the testimony was introduced. Accordingly, we hold that the admission of the Holecek deposition was proper.

This brings us to the question of whether the trial court correctly concluded that Holecek's policy was not cancelled on April 11. Allstate argues that Holecek's signing of Form RD–42 without reading it created a valid unilateral contract cancelling the insurance policy as of 4:40 p.m., April 11. We hold that it did not. Corbin teaches that when a party signs a contract without reading it, thinking that he knows its terms, he has assented under a mistake of fact if those terms are different from what he thought they were. Whether or not this mistake of fact makes the contract voidable depends on whether the other party had reason to know of the mistake. 3 *Corbin on Contracts* § 607 at 662. Where the other party knows or has reason to know of the mistake or where he or she causes the mistake, the contract is voidable. *Id.* § 610 at 692. In the instant case Holecek explicitly informed the Allstate agent that he wanted his policy to expire only after the money he had paid ran out. The agent ignored this request and handed Holecek Form RD–42 which apparently provided for immediate cancellation of the policy.[3] Thus the agent permitted, if indeed

---

2. The court's award of $303,117.20 was equal to the compensatory damages awarded to Coleman against Holecek. The trial court held that Allstate should not be liable for the $50,000 award of punitive damages against Holecek.

3. In fact, the record is unclear as to whether the provision giving the cancellation immediate effect was on the form at the time Holecek signed it. Holecek did not know whether or not the provision was there because he did not

he did not induce, Holecek to sign the contract knowing that its terms were materially different from what Holecek understood them to be. Under these facts no binding contract was created. The district court was therefore correct in holding that Holecek's insurance policy was still in effect on the date of the accident.[4]

## The Imposition of Liability in Excess of the Policy Limits

The trial court found that Allstate was guilty of gross negligence and bad faith in failing to defend the Coleman suit. Accordingly, the court held Allstate liable for the full $303,117.20 awarded to Coleman as compensatory damages, even though Allstate's liability under the insurance policy was limited to $100,000. Allstate appeals that ruling.

■ Allstate contends that an insurance carrier which wrongfully refuses to defend its insured is liable for a judgment in excess of the policy limits only where the carrier

rejects a reasonable settlement offer from the plaintiff. Since Coleman never made a settlement offer, Allstate contends that its liability is limited to that which it faced had it defended the personal injury suit and lost. *Johansen v. California State Automobile Association Inter-Insurance Bureau,* 15 Cal.3d 9, 18–19, 123 Cal.Rptr. 288, 538 P.2d 744 (1975) (dictum); *Communale v. Traders & General Insurance Co.,* 50 Cal.2d 654, 328 P.2d 198 (1958).[5]

Coleman contends that an insurance carrier's duty is not so limited. He argues that where it is likely that the insured will be found liable and that the recovery will be greatly in excess of the policy limits, the carrier's duty to give equal consideration to the interests of the insured, *Bollinger v. Nuss,* 202 Kan. 326, 449 P.2d 502 (1969), requires the carrier to at least explore the possibility of settlement even in the absence of a settlement offer from the plaintiff.

This contention has never been squarely presented to the Kansas Supreme Court.[6]

read the form before signing it. The trial court found that the insurance agent either was unable or unwilling to recall whether that provision was added after the form was signed. This state of facts only bolsters our conclusion that no valid contract of cancellation was formed when Holecek signed Form RD–42.

4. *State Farm Mutual Automobile Insurance Co. v. Miller,* 194 Va. 589, 74 S.E.2d 145 (1953), relied on by Allstate, does not compel a contrary result. In *Miller,* as in the case at bar, plaintiff sought to set aside a written cancellation of his insurance on the ground that he had signed the cancellation form without reading it and that the form provided for immediate cancellation while he had intended for the policy to run until the end of the month. However, the case is significantly different from the case at bar in that Miller admitted that he did not inform the insurance agent that he wished his coverage to run until the end of the month. Further, in *Miller,* the insurance agent testified that Miller said that he wanted the cancellation to be effective immediately. Thus in *Miller,* the agent neither knew nor had reason to know that the plaintiff was signing the cancellation form in the mistaken belief that it provided for cancellation at the end of the month. Thus the *Miller* case is inapposite to the case at bar.

5. The decisive factor in fixing the extent of . . . liability is not the refusal to defend; it is the refusal to accept an offer of settlement within the policy limits. Where there is no opportunity to compromise the claim and

the only wrongful act of the insurer is the refusal to defend, the liability of the insurer is ordinarily limited to the amount of the policy plus attorneys' fees and costs. In such a case it is reasoned that, if the insured has employed competent counsel to represent him, there is no ground for concluding that the judgment would have been for a lesser sum had the defense been conducted by insurer's counsel, and therefore it cannot be said that the detriment suffered by the insured as the result of a judgment in excess of the policy limits was proximately caused by the insurer's refusal to defend.

*Communale v. Traders & General Insurance Co., supra,* 50 Cal.2d at 659–60, 328 P.2d at 201 (citations omitted).

6. Other jurisdictions which have considered this question have reached varying results. A number of courts have held that a settlement offer within the policy limits is a prerequisite to a recovery in excess of the policy limits. *See, e. g., Seward v. State Farm Mutual Automobile Insurance Co.,* 392 F.2d 723, 727 (5th Cir. 1968) (applying Florida law); *Merritt v. Reserve Insurance Co.,* 34 Cal.App.3d 858, 110 Cal.Rptr. 511 (2d Dist. 1973); *Cotton States Mutual Insurance Co. v. Fields,* 106 Ga.App. 740, 128 S.E.2d 358 (1962). Other courts have held to the contrary. *See, e. g., Fidelity & Casualty Co. v. Robb,* 267 F.2d 473, 476 (5th Cir. 1959) (applying Texas law); *Fulton v. Woodford,* 26 Ariz.App. 17, 545 P.2d 979 (1976); *Rova Farms*

However, in *Rector v. Husted,* 214 Kan. 230, 519 P.2d 634 (1974), a case involving a bad faith refusal to accept a settlement offer, the Kansas Court set forth certain principles regarding the insurance carrier's fiduciary duty to the insured which provide much guidance in considering the case at bar. The court stated:

> The mutual fiduciary relationship of the insurer and the insured imposes a duty upon the insurer to make reasonable efforts to negotiate a settlement of a claim against the insured. The appellant, whose agents were cognizant of the evidence in this case, did not give fair consideration to the insured's position when they elected to take their chances with the jury without reasonably attempting to negotiate a settlement.
>
> This is not to say the appellant was required under the circumstances to settle this claim for $6,000; rather, we believe it was incumbent upon the appellant, with a claim involving admitted liability and permanent disability, to make a good faith attempt at negotiating a settlement. By taking a chance with the jury the appellant was exposing the insured to potential personal liability for an amount well above the policy limits. . . .
>
> Fair and equal consideration of the insured's vulnerable position demands that reasonable attempts be made to protect him from such exposure.

*Id.* at 643.

While these statements were made in the context of a bad faith refusal to accept a settlement offer, they are equally applicable, as the dissent in *Rector* recognized, where the insurance carrier fails to initiate settlement negotiations in the absence of an offer from the plaintiff. The duty to consider the interests of the insured arises not because there has been a settlement offer from the plaintiff but because there has been a claim for damages in excess of the policy limits. This claim creates a conflict of interest between the insured and the carrier which requires the carrier to give equal consideration to the interests of the insured. *Bollinger v. Nuss, supra.* This means that "the claim should be evaluated by the insurer without looking to the policy limits and as though it alone would be responsible for the payment of any judgment rendered on the claim." *Rector v. Husted, supra* at 641. When the carrier's duty is measured against this standard, it becomes apparent that the duty to settle does not hinge on the existence of a settlement offer from the plaintiff. Rather, the duty to settle arises if the carrier would initiate settlement negotiations on its own behalf were its potential liability equal to that of its insured.

In the case at bar, Allstate recognized that Holecek was almost certainly liable for the accident and that it was probable that Coleman would recover a judgment in excess of the policy limits. Indeed, before Allstate withdrew from the case, it asked for an extension of time in which to answer the complaint so that it would have an opportunity to engage in settlement negotiations with the plaintiff. It was Allstate's untimely withdrawal from the case and from the embryonic settlement negotiations which ultimately led to a judgment greatly in excess of the policy limits. This result might easily have been avoided had Allstate continued the settlement negotiations under a reservation of rights or had it sought a judicial determination of its liability on the policy prior to resigning the defense. Accordingly, we hold that the district court was correct in holding Allstate liable for the full amount of the compensatory damages awarded in favor of Coleman. *Cf. Bennett v. Conrady,* 180 Kan. 485, 305 P.2d 823, 826 (1957) (carrier's negligent refusal to conduct defense exposes it to liabil-

*Resort, Inc. v. Investors Insurance Co. of America,* 65 N.J. 474, 323 A.2d 495 (1974); *State Automobile Insurance Co. v. Rowland,* 221 Tenn. 421, 427 S.W.2d 30 (1968); *see also Young v. American Casualty Co.,* 416 F.2d 906 (2d Cir. 1969).

While we believe that these latter cases represent the better view, it is to the law of Kansas that we must look in resolving the present controversy.

ity for full amount of judgment against insured) (dictum).[7]

*Allowance of Attorney's Fees*

Relying on the provisions of the Kansas insurance code, K.S.A. 40–256, the trial court awarded Coleman attorney's fees in the amount of $20,000. Allstate contests this ruling, arguing that K.S.A. 40–256 is inapplicable in a garnishment proceeding.

The garnishor in a garnishment proceeding stands in the shoes of his debtor. *Gilley v. Farmer,* 207 Kan. 536, 485 P.2d 1284, 1290 (1971). Since Holecek would have been entitled to recover his attorney's fees had he brought the instant suit, Coleman argues that he, too, is entitled to attorney's fees.

The language of K.S.A. 40–256 lends strong support to this argument. The statute provides:

> [I]n *all* actions hereinafter commenced, in which judgment is rendered against any insurance company as defined in K.S.A. 40–201, . . . if it appear from the evidence that such company . . . has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an

attorney's fee for services in such action, including proceeding upon appeal, to be recovered and collected as part of the costs. . . .

(emphasis added). Thus the statute does not limit its applicability to direct actions by the insured against the insurance carrier but rather provides for recovery in *all* actions against the carrier in which there has been an unjustified refusal to pay under the policy. Since the statute is compensatory in nature, *Wolf v. Mutual Benefit Health & Accident Association,* 188 Kan. 694, 366 P.2d 219, 226 (1961), it is only just that the garnishor as well as the insured be permitted to recover the costs of enforcing the insurance policy.

Allstate relies on *Bollinger v. Nuss, supra,* in support of its contention that K.S.A. 40–256 is inapplicable to a garnishment proceeding. In *Bollinger* the Kansas Supreme Court held:

> A proceeding in garnishment is regarded as a special and extraordinary remedy provided by statute. The statutory provisions governing the exercise of such a proceeding are conclusive and exclusive of all other provisions of the code of civil procedure pertaining to civil actions generally.

---

7. Allstate argues that this court's decision in *Rider v. State Farm Mutual Automobile Insurance Co.,* 514 F.2d 780 (10th Cir. 1975) (applying Kansas law), compels a contrary result. In *Rider* we cited with approval the following passage from the trial court's opinion:

> "It would be incongruous to allow the insured the windfall of a right to recover amounts in excess of his policy limits from his insurer *where the insurer wrongfully refused to defend and where even if it had defended there would have been nothing it could have done to relieve the insured of his excess liability. That is, in the absence of a showing that there was something the insurance company could have and should have done that would have relieved the insured of his excess liability,* the negligence or bad faith of the insurance company in refusing to defend would have no causal connection to the insured's losses, in excess of the policy limits. In each of the cases the court has examined where an insurance company's liability was extended beyond the limits of the policy, the reason and justification was found in the insurance company's refusal to accept

a reasonable offer of settlement. That is because it is the act of the insurance company in rejecting the offer which is the direct cause of the insured's excessive liability." *Id.* at 786 (emphasis added).

We believe that Allstate gives this passage too broad a reading. The underlying premise of that passage is that liability for a judgment in excess of the policy limits will be imposed where "there was something the insurance company could have and should have done that would have relieved the insured of his excess liability." In the instant case, the insurance carrier could have and should have continued negotiations under a reservation of rights in order to avoid prejudicing the interests of the insured. Although we cannot be absolutely sure that the continuation of the settlement negotiations *would have led to a settlement in* an amount less than the judgment ultimately entered, Allstate had at its disposal the means of eliminating this uncertainty by continuing the negotiations under a reservation of rights. It failed to follow this sensible course and as a result must bear the full responsibility for the judgment ultimately imposed.

202 Kan. at 342, 449 P.2d at 514. Since the statutes governing garnishment proceedings not only fail to provide for attorneys fees for plaintiffs in garnishment proceedings but also imply that such fees are *not* to be awarded, *see* K.S.A. 60–721, Allstate contends that the allowance of attorney's fees was improper.

The notion that the garnishment statutes are the exclusive source of law governing garnishment proceedings has been questioned in more recent Kansas cases. For example, in *Gilley v. Farmer, supra,* the court refused to follow *Domann v. Pence,* 185 Kan. 702, 347 P.2d 373 (1960), a case containing language almost identical to that used in Bollinger. Thus in *Gilley* the court sanctioned the use of a motion to strike, even though that particular procedural device is not provided for in the statutes governing garnishment statutes. While *Gilley* is not dispositive of the question of whether attorney's fees are available in a garnishment proceeding based on an insurance carrier's wrongful failure to defend its insured, it does cast doubt on the continuing validity of the passage from *Bollinger* relied upon by Allstate.

 Not only is *Bollinger* questionable authority for the position taken by Allstate, the very language relied on by Allstate is inapplicable to the case at bar. *Bollinger* states only that the garnishment provisions of the code of civil procedure preempt any other provisions of the code of civil procedure. However, K.S.A. 40–256 is not part of the code of civil procedure but, rather, is found in the insurance code. The court therefore concludes that the specific provisions of 40–256 of the insurance code providing for the award of attorney's fees in cases such as this one take precedence over the more general provisions of the code of civil procedure, including the garnishment statutes found therein.

Accordingly, the judgment is affirmed.